Okay, the next case before the Court is, I love the name of this case, TASER v. Phazzer, TASER International v. Phazzer Electronics, Inc. I want to address a question first. There is a pending motion that was filed on the 3rd of this month, so on July 3rd from Mr. Abood, personally seeking to stay, the contempt order below, pending appeal here. That same motion was filed back in October of last year and was denied. The Court has reviewed the motion and we deny it for the same reasons as it was denied by the motions panel, most importantly because there was no monetary sanction entered against Mr. Abood and he therefore has no standing to appeal. And so we will deny that motion so that that technical problem, that technicality is taken care of before we start this argument. And I note that Mr. Abood is not here. I was going to tell him he couldn't argue, but we don't need to address that issue. All right. But there are people who can argue. So Mr. Davidoff, did I pronounce that correctly? Yes, Your Honor. Okay. And you want two minutes for rebuttal? That's all, Your Honor. Okay. Thank you. Thank you. You can begin. You may please record. What's the current status of the 262 reexamination? Where is it? I believe that it's been denied and I think appeal has been filed, but I don't know where the status of that appeal is, so it was denied by the PTO. You say it's appealed. It's pending before the Patent Board, correct? Correct, Your Honor. Correct. You don't know what stage of the briefing it's at? I do not. But I know that I believe an appeal was filed. By the Patent Owner? Yes. But it's not filed here? Not here. Before the Administrative Office, PTO. So the issue, I guess right here, if I can get to it, we had four points. I'd really like to try to address two and three if I can with my time, which relate to the damages order, and then point four is to the contempt order. And as it would relate to the damages order, essentially what this came down to was we had a default sanctions and a default, which we were before this court on another appeal. During the pendency of that appeal, a damages order was entered. That relates to point one, which we can get to on the jurisdictional issue, but I'd like to focus on at least the content of this damages order as it relates to Rule 55, really subsection C. And the court under that says may, under 55, conduct hearings in order to effectuate the judgment, and it needs to conduct an accounting, determine damages, establish truth of allegations or evidence, and investigate any other matter. And so essentially what we had from the court when we look at this order is really a misapplication. The court states in plain terms that it's not reading 55 to engage in the judicial labor necessary to sustain a proper damages order. The court states it was wrong. But you're not appealing the calculation of damages, are you? Well, I'm appealing that damages order in total because there was nothing done as far as the judicial labor necessary under 55 to make a determination. So you're saying the court had no authority to enter a damages order without conducting a hearing? Correct. Based upon the amended complaint and the nature of the amended complaint. And we can get into some of the things stated in the amended complaint, which state upon information and belief. And so what the court says here in its order, it states it was robbed of the opportunity. But you're trying to relitigate the merits of the default judgment. Not not not no, I'm not, Your Honor, and I don't think that's it at all. So the concept of the determination to state that we're trying to relitigate the merits of the default order is not it. The purpose of 55C is to protect the sanctity of the court, to not permit for when there's a default, and let's call it what it is because the court upheld it, a sanction against my client for conduct in litigation. That sanction does not permit for the court to now create something of law that is otherwise illegal, unsustainable. Well, wait. The sanction was a default judgment, which we affirmed. Correct, Your Honor. And that default judgment allows a calculation of damages, correct? The sanctions, so the sanctions judgment would necessarily get to that point. That's the jurisdictional argument within the first section, regardless it was on appeal. Then based upon the default judgment, the court now has to make a determination as to what or how to apply those things. What the number is, right? And how, because we're dealing with two different things. So the court has stated what Your Honor has stated. We're attempting to relitigate something. And so we're not attempting to relitigate it. What we're saying is, which relates to point 4, which is this contempt order. But the default judgment then finds you in default and found that there was, in fact, infringement, right? Correct. And so what I try to point out, Your Honor, is that whether the default is entered as a matter of sanctions or the default is entered as a matter of failing to plead, a default is a default. Now we have to determine from that default on what are we going to impose damages. We don't just take the complaint and say ---- Well, but yes, you do. I mean, I don't understand that. You have to you do have to determine what the dollar figure is, which I don't understand you to have disputed. But your argument that the court couldn't enter damages with respect to some of the products identified in the complaint ignores the fact that the default judgment said by default you have infringed with these products these particular claims. And respectfully, Your Honor, I would disagree because of the Ryan case and the Thompson case, which was cited within the Ryan case. The Ryan case says the court must determine the well-pled allegations that support the relief. So even upon a default, if the allegation is not well-pled, it doesn't provide for relief. You could provide for sanctions. Sanctions can be different than the relief in the complaint. So the court could say I impose sanctions against you for the violation of your behavior. The court cannot say because of the sanctions, I'm going to allow this to be valid patent when it isn't. That there is no rule that permits for that type of sanction. In fact, the Thompson case says the opposite. I don't understand what you're talking about. A default judgment on a default judgment. Yes, Your Honor. If the pleading says this is a valid patent and it's infringed by these two products and the court enters judgment, that's the end of the liability inquiry. Not entirely, Your Honor, no. And respectfully, I disagree because if the complaint states it and just because the default is entered, the damages that stem from that default still are required to undergo. Well, that's one item under 55C, Your Honor. You're talking about conducting an accounting, number two, determining damages. But there's also three and four under 55C that we can't just overlook. We can't just say establish truth of the allegation or the evidence. So if we could say, oh, you could determine damages, well, let's just brush aside determining the truth or allegations of the evidence and second, investigate any other matter. I thought the sanctions order basically announced and proclaimed that your client is hereby found to have infringed with its enforcer taser-like product. And so all that was left now was to do an accounting of how many infringing enforcer products you had sold and then figure out what the damages are from that. And what I believe Your Honor just stated as far as, let's call it a restatement of that sanctions order, the first one. Which we affirmed already. Correct, Your Honor. A year ago. Correct, Your Honor. So now that's over. I don't know what's left to try to figure out what more needed to be done for the damages order and just calculate up all the infringing enforcer products. Well, I think what Your Honor has just said, and that gets to point four on the contempt, is that, well, all of them. So all of them, meaning. I guess that's what I'm trying to figure out. Which is your argument is kind of the same theme that runs through a few different points. And your theme is that, oh, when the judge said enforcer products, we didn't know which enforcer products. It could have been this kind of enforcer product or that kind of enforcer product. And the district court, in its damages order, said it's all enforcer products. There was no limitation to one type of enforcer product over another. And that's why the judge held you in contempt when you went ahead and kept something in the subcategory of enforcer products after the injunction order was issued. And if I could maybe point the court's attention to review the E-plus case, because I think the E-plus case, in some respects, provides some support as to what I'm suggesting to the court in various sections. And essentially, this was vacating a permanent injunction after the PTO canceled. And so what I'm trying to get to is, your Honor asked me at the outset what's going on in the PTO. Let's set that aside. That stems, the whole purpose of that stems from not protecting FASER, not protecting a defaulting litigant. It protects the court from engaging in permitting for something to sanction that is otherwise not sanctionable. And so essentially, I understand that the court said, you're sanctioned as your Honor said. But you beg the call of the question, what FASERs, what FASER pistols? Because as we get to the enforcer FASER pistols. But then there's Claim 13, and Claim 13 has very specific portions. And the enforcer pistols, if it doesn't have a data port, it's not under Claim 13. The problem for you, I think, is that we're now living with the orders that have been appealed and have been affirmed. So that's it. We're no longer exploring the meaning of various limitations of Claim 13 now. Now we're trying to look at, on its face, is the order clear? And I think there's a pretty strong argument that it is clear. That we aren't left to decide which enforcer products of FASERs is part of the order. It's all of them. Because there's no restriction on the types of enforcers that you're selling that have been enjoined. And would that not then be overbroad? I don't know. Your problem is that you have a default judgment against you, and you just don't want to accept it. I mean, the liability part of this is over. It's done. You have a default judgment against you. I understand, Your Honor. You want us to go back and reopen this up and revisit the merits of the case. No, Your Honor. That's not what I'm asking at all. In fact — It certainly sounds like that's what you're seeking. No, certainly not, Your Honor. In fact, what I am asking is that if there is something that is sustainable within the complaint as a matter of law, and the damages can be assessed against it, that that's what damages be assessed against. If it's not sustainable, then it's inappropriate under 55C. And, Your Honor, I agree with you that I'm asking the court to engage in further judicial labor, because 55C, as well as Ryan and the other cases, require it. Well, it's not going to happen if you have a default judgment against you. But you don't get there until you have the default, Your Honor. 55C — you're saying 55C assumes that the default didn't happen and that all liability can be reassessed? Absolutely not, Your Honor. What I'm saying under 55C is it protects — And you're actually saying 552C. 2C, I apologize. 2C. Yes, Your Honor. And what it protects — and I just — there was a quote from another case that I thought was of value. It's — it protects the court from engaging in becoming an arm, essentially, from otherwise not well-pled complaint as a result of a default, becoming an arm of enforcing something that's otherwise not enforceable as a matter of law as a result of a sanction of default, whether you answered or didn't answer. And that's why the court has the power and always has had the power not only to engage in further judicial labor to determine what is appropriate in that complaint, despite the default, but what is appropriate and then appropriate as far as the damages go, and further exacerbated by the fact that here we're dealing with validity of patents, which is strictly a matter of law. And so there's no case that ever says that the conclusions of law on the complaint are always founded. They aren't. The conclusions of law, the court does not have to accept even upon a default. Validity is a conclusion of law.  or another defaulting litigant, even through sanctions, should have the right or have another bite at the apple. Not what I'm saying. What I'm saying is the whole purpose of 55C in the case law cited in our briefs is that it protects the judicial process. It does not permit for the court to become an arm. And I think what we could see from this case was — So you're saying that by protecting the judicial process, the court has to start over. No. Because default essentially is meaningless except — I mean, Because you're saying that he's got to undertake a full hearing on validity, on which products infringe, and on damages, right? I think the damages were somewhat easily calculatable. I think the issue is on validity essentially relating to what was claimed in the complaint versus what's being defaulted. So since there are no answers, there is no defenses. The defenses are not defenses to the judgment. The judgment is present. The defenses are simply to what is this appropriate amount of that judgment. And if there are further sanctions necessary, those sanctions don't necessarily have to stem from the face of the complaint. The sanctions can be anything. But still, on the lawsuit, what was it that the district court, in your view, should have done that it did not do, specifically? What should it have done? What action did it need to take? Well, specifically, I think the court, one, would have needed to determine what phasers, as Your Honor has said, all phasers, is brought. What phasers are violating under this order, whether that there was a valid patent, because it was raised, stating to the court, because we know from the E-Plus case and the other cases, if the patent's invalid, you can't impose sanctions for it. But in your view, the judge could not move forward on calculating damages until it did a validity determination? I would suggest to the court that if a validity determination was not done, then essentially, what we've permitted for is just a sanctioning at any time. And you could skip validity. Okay. So let me give you a hypothetical. So I file a lawsuit and I say that, you know, and I make allegations regarding the fact that you hit me with your car and you caused personal injury. All right? Default judgment's entered. Do you believe that you could then relitigate the question of whether you actually hit me with the car? The hitting with the car, if stated in that manner, I could not disagree with. However, if you said, upon information and belief, as Taser did, you hit me with the car, then yes, because now it's an unfounded allegation. There has to be a determination made upon what information and belief. And there's a recitation within that complaint upon information and belief. And it goes on and on and on. So essentially So then the default judgment doesn't count. Oh, no, it counts. How? You were relitigating the very facts that there was a default judgment granted on. No. There's still a default judgment in place. I'm not getting around that. There's no question there. The question then becomes, what is the effect of the default judgment? Okay. You're out of time. I'll give you one minute for rebuttal. Thank you, Your Honor. Thank you. Getting directly to your question, Judge Chen, about the status of the appeal in the PTO on the re-exam. It is still pending. Nothing has changed. The appeal has been fully briefed. It is awaiting a setting of oral argument. So that's the current status of that. Is it ex parte or inter parte? It's an ex parte. Well, the re-exam was ex parte, but we then filed an appeal. I'm sorry. It was an ex parte re-exam? Yes. And then, I see. And then it was an adverse rejection by the examiner. You represent the patent owner. You're appealing that to the board. Correct. Correct. So what do you think 552C means? Well, Rule 55 is not mandatory with the court. It is discretionary. And critically here, FASER never requested the district court to hold a Rule 55 hearing. And in the prior appeal in this matter, where they should have appropriately raised that issue if they were going to raise it at all, because it really goes to what's the scope of the injunction. And they didn't do so until the reply brief. And this issue was discussed significantly at the prior oral argument in the first appeal. And this court said, it's not in the blue brief. You've waived it. And so they've certainly, if they've waived it in the prior appeal, they've waived it here. And as I said before, as this court also talked about in the first oral argument, they never requested it in the district court. So I don't think Rule 55 is really applicable here at all. Well, their argument would be, I'm sure he's going to say in his one minute of rebuttal, is that we may have waived it as to the scope of the injunction, but we didn't waive it as to measurable damages. As to? Measurable damages. What would be your response to that? Well, the prior injunction and default order that this court has affirmed already awarded damages. And as noted in that decision, that was not appealed in the first appeal. And so only the accounting was left. And so on the damages order here, it should be strictly limited to those accounting questions, which, as Your Honor has pointed out, they've not challenged at all on appeal. There is absolutely no challenge to the court's factual findings relating to those. Instead, what FASER is doing is going back and trying to attack the underlying judgment, which has been affirmed. And so that is foreclosed here. They're really talking about the scope of the injunction. And I think it's important to point out here, going back to his arguments relating to the amended complaint and well-pleaded facts in the complaint. The amended complaint expressly alleged that FASER enforcer CEWs include non-volatile memory that stores firing data, and that that data includes the required date and time stamps for the trigger operation of the weapon, and that that infringes Claim 13. And so that is a well-pleaded fact that was accepted by the court as true on default. And the complaint also specifically asked for a declaration that the FASER enforcer CEW is within the scope of the claims of the 262 patent. And the court, in fact, found that in the injunction order then, and said the district court expressly finds that the FASER enforcer CEW violates Claim 13 of the 262 patent. So they're really trying to reopen that here. I think it's important to note that Claim 13 of the patent says absolutely nothing about a data port. That word is nowhere found in the claim or in the patent. This is really a manufactured issue after the fact. What the Claim 13 requires is a microprocessor that's simply programmed to track date and time of this electrical stimulus from the weapon. And so there's no data port requirement there whatsoever. The court specifically found, and at the contempt hearing and on the damages order as well, that there is no ambiguity here in the court's injunction order. It specifically enjoins the FASER enforcer CEW, as the court said, period, full stop, without distinction. And as Mr. Kirk French testified at the contempt hearing, he's the purported owner of FASER Electronics, that this was something that was never distinguished at all during the course of the litigation. They never produced any technical documents. They never attended depositions. They didn't attend the court-ordered technology tutorial conference in which these weapons were examined, deployed, disassembled, and everything for the court's edification. And so they have never, before the sanctions order, ever challenged that there was an enforcer CEW that, in fact, had some kind of different functionality. And when you look at the attachments to the complaint, which include the manuals that are available online, various snapshots and things from their technical specifications and from the website, never was there any distinction that somehow a weapon of the same name had some kind of different functionality, which, quite frankly, is really absurd in the context of law enforcement sales, which is the target audience here. Because law enforcement agencies require, as a specification, that you have to have this timestamp recording of the weapon so that they can both protect themselves for excessive use of force-type claims and also so that they can hold their officers accountable. And so there never was a distinction. The court appropriately said, you're trying to reopen the merits of this, which has been concluded on default, and I'm not going to consider it. And you don't get to, on contempt, you don't get to unilaterally, without ever filing a motion to clarify or modify the injunction, violate it, and then come in here later and contend that somehow their scope is different. And this court, in the Tevo decision, you know, specifically talks about that the time to address these issues is at the time of the direct appeal of the injunction, which has passed. They did not raise it there, and so it is waived here. So unless the court has any further questions, that's really what I've got. No, thank you. Thank you. So why isn't this waived by the fact that you didn't raise it the first time around? I don't think it was waived. I think it was raised on appeal. Not Rule 55. You never said there was some obligation under Rule 55 as it relates to the injunction. The scope of the injunction. Well, absolutely. There was a response that was filed to the damages order. I mean, filing the timely objection to it or timely appeal still preserves the rights. We filed the timely appeal to the entry of the damages order. Argument that we had here. Correct. Never in your brief on appeal did you argue that the court had some procedural obligation to conduct a hearing or make findings of that. I believe we did have that in the brief, but it was inappropriate because the order was entered subsequent to the brief's filing on the sanctions order and was preserved within the argument here. So both for the damages order and the contempt order. But to get to my, one thing I wanted to cite too is the SWIFCO case that was in the E-plus case. And they simply said the court does not abdicate its power to remove or modify a mandate if it's satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong. Well, the fact that the district court had the right to do that doesn't mean that the district court had an obligation to do that. Correct, depending on the totality of the circumstances, Your Honor. I cannot get around the fact that it says may. However, when you look at the Ryan case, you look at the E-plus case, you look at the Graney Goose case, which essentially suggests that the defaulted enjoined defendant has a right to know specifically what this is so it can design around it. So the court processed through an informational and relief complaint. But wait, Mr. French, your own representative testified that he knew exactly what was covered by the injunction. Well, the injunction says it covers all phaser enforcers which don't violate upon information and belief in the complaint, don't violate the informational and belief section. Because, and I said data court, I apologize. It's time and date. It's difficult for me to understand or to believe that you don't understand that a default judgment accepts all allegations  Well pled. All well pled allegations, Your Honor. And there are some allegations. You wanna argue, and you wanna argue whether the allegations were well pled or not. Well, I believe there's substantial case law that supports that position because the court should not become a hammer for those that have the ability to exercise the judicial process. Phil, why don't you just show up in this case? I wish I was representing them then, Your Honor. Things would have been very differently. They were about to go bankrupt back in the day. Are they still a going concern, phaser? With the inability to sell any enforcer, no. Now, if they could sell an enforcer. But I mean, they told the district court. They still keep appealing things. They told the district court, we can't show up. We can't answer the complaint. We can't respond to court orders because we're going bankrupt. Bankrupt because of litigation. No, this was before the default. You're correct, Your Honor. I think Your Honor, all of Your Honors are touching on one of the things that's quite important is the cost of litigation. So you have a publicly traded competitor in the marketplace come in on an okay pled complaint, smash a minor competitor with discovery. The minor competitor now can't defend itself. How could he even smash with discovery when he never even answered the complaint or never responded to even the first discovery request? There was a motion to dismiss and there were thousands of pages in discovery, Your Honor. So I have to disagree that there was a motion to dismiss pending at the time that the sanctions were entered and there was thousands of pages of discovery produced. So, essentially. You're out of time. Thank you, Your Honor. Thank you.